**Opinion issued October 18, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00925-CV

———————————

## IN RE COMMITMENT OF RICHARD A. DUNSMORE

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 84023-CV**

---

## O P I N I O N

Appellant Richard A. Dunsmore was convicted by guilty plea of one count of sexual assault and two counts of attempted sexual assault. As he approached the completion of his prison term, the State filed a petition to have him civilly committed

as a sexually violent predator.[1] A jury found Dunsmore to be a sexually violent predator, and the trial court signed a final judgment directing his civil commitment for treatment and supervision.[2]

On appeal from the order of commitment, Dunsmore raises seven issues related to the admission of evidence at trial. He contends that the trial court erred by excluding testimony of several trial witnesses and by denying his requests to read several of the State's admissions to the jury.

We conclude that the trial court abused its discretion by refusing to permit Dunsmore to explain testimony elicited by the State about the stipulated sexual assaults which established his status as a repeat sexually violent offender.[3] The State's trial strategy of proving that Dunsmore suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence[4] by eliciting his denials of specific details about prior sexual assaults opened the door to him presenting a defense that explained his testimony. Such evidence would not constitute an impermissible collateral attack on the prior convictions, as argued by

---

[1]     *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.151.

[2]     *See id.* § 841.081.

[3]     *See id.* §§ 841.002(6), 841.003(b).

[4]     *See id.* § 841.003(a).

2

the State, because Dunsmore's stipulation of guilt was not a stipulation that every detail of every allegation against him was true.

Nevertheless, based on a review of the entire record, we further conclude that the trial court's evidentiary errors did not probably cause an improper judgment in this case.[5] We also conclude that the trial court acted within its discretion when it excluded some of Dunsmore's proposed testimonial evidence and when it refused to permit certain admissions to be read to the jury. Accordingly, we affirm.

## Background

In 2010, appellant Richard A. Dunsmore was convicted of one count of sexual assault and two separate counts of attempted sexual assault. Pursuant to the terms of a plea bargain, he was given a seven-year prison sentence.

Six months before Dunsmore's scheduled release, the State petitioned to have him civilly committed for treatment and supervision as a sexually violent predator pursuant to the Texas Civil Commitment of Sexually Violent Predators Act of 1999, also known as the SVP Act.[6] A person is a "sexually violent predator" for the purposes of the SVP Act if the person is a "repeat sexually violent offender" and

---

[5]    *See* TEX. R. APP. P. 44.1(a)(1).

[6]    *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.151.

3

"suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."[7]

Before trial, the State requested that Dunsmore be prohibited from denying that he committed offenses to which he had pleaded guilty or "any other form of collateral attack" on the convictions. The trial court orally granted the motion with respect to a portion of the State's proposed limine order which excluded any evidence constituting "explanation of mitigating circumstances regarding prior convictions including, but not limited to, denial of commission of offense(s), attack on the victim's credibility or statements, attack on official records, and any other form of collateral attack on Respondent's criminal convictions as these judgments are 'conclusive under the doctrine of collateral estoppel and not rebuttable' in a subsequent civil proceeding."[8] In granting the State's request, the judge orally noted

---

[7]   *Id*. § 841.003(a).

[8]   The State's proposed order specified that "counsel for the Respondent, and through such counsel any and all defense witnesses, be and hereby are instructed to refrain from making any mention or interrogation, directly or indirectly, in any manner whatsoever, regarding the matters set forth in the paragraphs sustained by the Court in such motion without first approaching the bench and obtaining a ruling of the Court in regard to any alleged theory of admissibility of such matters outside the presence and hearing of all prospective jurors and jurors ultimately selected in this cause." The proposed order identified *McCormick v. Tex. Commerce Bank Nat'l Ass'n*, 751 S.W. 2d 887 (Tex. App.—Houston [14th Dist.] 1988, writ denied), as the authority for excluding evidence of Dunsmore's explanation of mitigating circumstances regarding prior convictions.

that counsel might "open the door" by examining a witness in a way "that may change issues."

At a trial before a jury, the State introduced a "pen packet" of documentation that showed that Dunsmore had been convicted of one count of sexual assault against Y.Q., and two counts of attempted sexual assault against L.K. and C.H. The State requested, and the trial court granted, a directed verdict declaring Dunsmore to be a repeat sexually violent offender.[9] Dunsmore did not dispute at trial that he was a repeat sexually violent offender. Thus the only issue disputed at trial was whether Dunsmore suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[10]

The State called psychologist Dr. Antoinette McGarrahan as its expert witness. Prior to her testimony, the trial court instructed the jury to limit its consideration of hearsay information contained in records discussed by any expert witnesses. The court explained that such evidence was to be considered only as a basis of the expert's opinion, and not for the truth of the matter asserted.

---

[9]    *See* TEX. HEALTH & SAFETY CODE §§ 841.002(6), 841.003(b) (defining "repeat sexually violent offender").

[10]    *See id*. § 841.003(a).

Making specific reference to the *Diagnostic and Statistical Manual of Mental Disorders* (or DSM-5), Dr. McGarrahan testified that she had diagnosed Dunsmore with "other specified paraphilic disorder"[11] and "other specified personality disorder

---

[11] "The term *paraphilia* denotes any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 685 (5th ed. 2013) (hereinafter, DSM-5). The DSM-5 explains "other specified paraphilic disorder" as follows:

> This category applies to presentations in which symptoms characteristic of a paraphilic disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the paraphilic disorders diagnostic class. The other specified paraphilic disorder category is used in situations in which the clinician chooses to communicate the specific reason that the presentation does not meet the criteria for any specific paraphilic disorder. This is done by recording 'other specific paraphilic disorder' followed by the specific reason (e.g., 'zoophilia').

> Examples of presentations that can be specified using the 'other specified' designation include, but are not limited to, recurrent and intense sexual arousal involving *telephone scatologia* (obscene phone calls), *necrophilia* (corpses), *zoophilia* (animals), *coprophilia* (feces), *klismaphilia* (enemas), or *urophilia* (urine) that has been present for at least 6 months and causes marked distress or impairment in social, occupational, or other important areas of functioning. Other specified paraphilic disorder can be specified as in remission and/or as occurring in a controlled environment.

*Id*. ¶ 302.89 (F65.89), at 705. With respect to her diagnosis of Dunsmore as having other specified paraphilic disorder, Dr. McGarrahan testified: "It's not

6

with antisocial traits and psychopathy."[12] She concluded that, in her expert opinion, Dunsmore has a "behavioral abnormality as defined by the Health and Safety Code"[13] that makes him likely to engage in predatory acts of sexual violence. In forming her opinion that Dunsmore was a high risk for sexual recidivism, Dr. McGarrahan noted the significance of his prior convictions and numerous other

---

> one of the other specified ones that we have in our categorization system but is allowed for conditions like what Mr. Dunsmore has which is essentially drugging or otherwise incapacitating women and having sex with them without their consent. So we consider that non-consenting, like a non-consenting paraphilia. He's aroused by the fact that the other person is not aroused or is not really even conscious."

[12] "Other Specified Personality Disorder" applies to:

> presentations in which symptoms characteristic of a personality disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the personality disorders diagnostic class. The other specified personality disorder category is used in situations in which the clinician chooses to communicate the specific reason that the presentation does not meet the criteria for any specific personality disorder. This is done by recording "other specified personality disorder" followed by the specific reason (e.g., "mixed personality features").

*Id.* ¶ 301.89 (F60.89), at 684.

[13] *See* TEX. HEALTH & SAFETY CODE § 841.002(2) ("'Behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.").

allegations against him, as well as his "modus operandi of drugging and sexually assaulting women." She testified that her opinion was based upon Dunsmore's "long history of engaging in sexually deviant acts for over at least the course of about 20 years that we know," a pattern of "drugging women in order to be able to engage in sexual behavior," including five sexually related convictions.

In the course of explaining the basis for her opinion, Dr. McGarrahan discussed detailed allegations of sexual assault by Dunsmore against Y.Q., L.K., and C.H., along with other unadjudicated allegations of assault against other women. She testified that it is appropriate to consider allegations of sexually related offenses that did not lead to convictions, because "we know from the research that many more sexual offenses occur" than are reported. In addition to the allegations that resulted in criminal convictions, Dr. McGarrahan also discussed other allegations against Dunsmore made by A.P. (a juvenile who reported falling asleep in Dunsmore's hotel room and feeling him "feeling her up" while unable to wake herself), C.S. (a juvenile friend of one of Dunsmore's daughters who reported that she awoke in her hotel bed to find that Dunsmore had "removed her shorts and inserted his penis into her vagina from behind and then ejaculated"), J.B. (a friend of Dunsmore's wife who reported that Dunsmore at times would give her "12 to 18 pills" and she would pass out, and that Dunsmore told her they had sex on multiple occasions though she had no recollection of it), and a different C.H. (a nanny for Dunsmore's daughter who had

8

"mental health problems and limited intellect" who was given "pills and alcohol" by Dunsmore, who then took pictures of her "engaged in sexual acts").

The State called Dunsmore as a witness during its case in chief, and he also testified in his own defense. His wife, Felicia Dunsmore, also testified on his behalf.

Psychiatrist Dr. John Tennison provided expert testimony on behalf of Dunsmore, opining that he does not suffer from a behavioral abnormality. He testified that he did not find Dunsmore to be at high risk for sexual recidivism due to his low score on a comparison test of other sex offenders with similar background. He further testified that he did not put great weight on Dunsmore's convictions. He also explained why he found Dr. McGarrahan's diagnosis to be incorrect and illegitimate.

The jury returned a unanimous verdict finding beyond a reasonable doubt that Dunsmore is a sexually violent predator, and the trial court entered an order of civil commitment.

**Analysis**

Dunsmore raises seven issues on appeal, all relating to evidence the trial court refused to allow him to present as part of his defense. In the first three issues, he contends that the trial court reversibly erred by excluding his own testimony as well as that of his expert witness, Dr. Tennison, and his wife, Felicia Dunsmore. In the

remaining four issues, he contends that the trial court reversibly erred by denying his request to read a number of the State's admissions to the jury.

We review the evidentiary rulings of the trial court under an abuse-of-discretion standard. A trial court abuses its discretion when it acts arbitrarily, without regard to any guiding rules and principles.[14] If we find there was an abuse of discretion, we will reverse only if we also find that the trial court's error probably caused an improper judgment.[15] In making this determination, we are required to review the entire record.[16] The role that excluded evidence plays in the context of the trial is important.[17] Thus, the exclusion of evidence "is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment."[18] But if erroneously excluded evidence was crucial to a key issue, the error is likely harmful.[19]

---

[14] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

[15] *See* TEX. R. APP. P. 44.1(a)(1).

[16] *See, e.g.*, *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 551 (Tex. 2018).

[17] *See State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).

[18] *See id.*

[19] *See Diamond Offshore Servs.*, 542 S.W.3d at 551.

## I.   Exclusion of evidence relating to circumstances of guilty pleas

In his first issue, Dunsmore argues that the court erred by excluding his proffered testimony about why he pleaded guilty to the underlying sexually violent offenses after the State "opened the door" for him to testify on that subject. Outside the presence of the jury, Dunsmore testified that he pleaded guilty to the offenses against C.H. and L.K. because he had been "roughed up" while in police custody, and he felt like he "was dying." He specifically denied sexually assaulting C.H. and L.K. He testified that when C.H. initially accused him of sexual assault, she also made a false allegation that he had pornography on his computer, and that police found no pornography through their investigation. After hearing the testimony presented in a bill of review, and after hearing the arguments of counsel, the trial court refused to permit the testimony to be presented to the jury.

Evidence of the facts or details underlying sexual assault offenses is admissible in civil commitment proceedings under the SVP Act when such evidence would assist the jury in understanding an expert's opinion testimony that a respondent suffers from a behavior abnormality.[20] Dr. McGarrahan testified that the "facts and details" regarding Dunsmore's sexual offenses were "significant in determining that he has a behavioral abnormality." As part of the basis for her

---

[20]   *See, e.g.*, *In re Commitment of Talley*, 522 S.W.3d 742, 748-49 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

opinion, she testified about her understanding of the facts underlying his adjudicated sexual offenses. Y.Q. was the caretaker of Dunsmore's elderly parents. He brought her a meal, which she ate. She fell asleep wearing a shirt, bra, and panties. She awoke to find herself naked, with Dunsmore on top of her, naked and having intercourse with her. In the case of C.H., Dunsmore came into her room while she was living at his house, leaving breakfast for her on the floor. After eating, C.H. awoke to Dunsmore grabbing and groping her, putting his hands up her shirt and down her underwear and pressing his penis against her. L.K. was seventeen years old when Dunsmore gave her marijuana, alcohol, and ice cream with a white substance on it. She passed out, then awoke to find that her tampon had been removed, and Dunsmore was "nude and on top of her."

Dr. McGarrahan opined that Dunsmore has not taken responsibility for committing the underlying sexual-assault offenses because he claimed that he did not commit them and that "he was coerced into pleading guilty, sort of against his will." She opined that this "goes to his antisocial orientation to not accept responsibility for his actions." She further testified that it "goes to his psychopathic characteristics" because "[i]ndividuals who lack remorse for others, they fail to take responsibility for their actions. They blame other people for the trouble that they get in, and we know that psychopathy and antisocial orientation is a risk factor for engaging in future sexual acts."

12

Dr. McGarrahan further opined that it is "important in a sex offender treatment program" for a person to admit his sexual offenses. She explained:

> It's much like the addiction model where if you don't admit you're an alcoholic or a drug addict you really can't go any further from there. You can't begin the work until you admit you have a problem. So that acceptance of responsibility is a major component in sex offender treatment; and if the person doesn't get there, they will not progress through treatment. It's also acceptance of responsibility, helps you reduce some of that antisocial lifestyle or orientation; and we know that people who continue to deny their offenses have that antisocial or psychopathic orientation. I don't believe someone can successfully complete a sex offender treatment program if they're in denial about their offenses.

Dr. McGarrahan also testified that Dunsmore "had a high score for pathological lying," concluding that "there's really no area that is essentially off limits for Mr. Dunsmore when it comes to his lying."

As its second witness, the State called Dunsmore himself to the stand. Beyond the basic facts that Dunsmore had pleaded guilty and thus had been convicted of sexual assault and attempted sexual assault—which he conceded—the State asked questions about specific details relating to the offenses, thus eliciting his denials of particular allegations.

The following exchange between the State and Dunsmore occurred with respect to the allegations by Y.Q., C.H., and L.K., which had been specifically mentioned by Dr. McGarrahan as forming part of the basis for her opinion testimony:

13

Q. On the night of July 19th, you did force your penis into the vagina of [Y.Q.], correct?

A. Yes.

* * *

Q. [C.H.] was asleep in her room, and you came in and brought breakfast for her?

A. Yes.

Q. And then you got into bed with her, correct?

A. No.

Q. You groped her breasts?

A. No.

Q. You fondled her vagina?

A. No.

Q. You attempted to penetrate her vagina with your finger?

A. No.

* * *

Q. This offense against [L.K.] took place on January 26, 2008; is that right?

A. Whatever you say.

Q. You had employed [L.K.] as a caregiver for your parents, correct?

A. No, ma'am.

14

> Q. And on the night of this offense, you attempted to penetrate [L.K.'s] vagina, correct?
>
> A. No, ma'am.
>
> Q. That is what you pled guilty to. Was it not?
>
> A. Yes, ma'am.
>
> Q. And you attempted to sexually assault [L.K.], correct?
>
> A. No, ma'am.

After the State passed the witness, Dunsmore's counsel sought relief from the limine order. He argued that the State asked questions about particular factual allegations and elicited his denials. He argued that if the State wanted to assert collateral estoppel as a basis to prevent Dunsmore from denying that he committed the offenses, "they should not have ever asked it, what he specifically did." But having asked, counsel argued: "Once that bridge is crossed, then I should have the opportunity to allow him to explain what happened and why it happened. . . . The question is whether or not a party which has already opened questioning on a particular issue has the right to forbid another party from pursuing that same line of questioning."

In response, the State argued that Dunsmore was collaterally estopped from explaining to the jury reasons for his guilty plea. The court agreed, and the jury never heard Dunsmore's testimony about why he pleaded guilty to the underlying sexually violent offenses.

Evidence that is otherwise inadmissible may become admissible when a party "opens the door" by creating a false impression with the jury that invites the other side to respond.[21] This rule is based, at least in part, on a waiver principle: once a party has opened inquiry into a particular topic, that party cannot complain when the opposing party wants to elicit other details related to that topic.[22] Generally, if the State on cross-examination "opens the door" into why a defendant pleaded guilty to an offense, he is entitled to fully explore the issue, including bringing out favorable details as to why he pleaded guilty.[23]

To prevail at trial, the State was required to prove that Dunsmore had been convicted of two or more sexually violent offenses, that a sentence had been imposed for at least one of those offenses, and that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[24] It was not required to prove any details or surrounding facts of the assaults.[25] Dunsmore's

---

[21] *See, e.g.*, *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009).

[22] *See, e.g.*, 1 MCCORMICK ON EVIDENCE § 55 (7th ed. 2013 & Supp. 2016); *Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977); *cf.* TEX. R. EVID. 107 (rule of optional completeness).

[23] *Parr*, 557 S.W.2d at 102.

[24] *See* TEX. HEALTH & SAFETY CODE § 841.003(a).

[25] *See id.*

status as a repeat sexually violent offender was not disputed at trial, and he did not attempt to argue that he was not in fact convicted of the requisite offenses. The trial court directed a verdict that Dunsmore was a repeat sexually violent offender.

The parties did litigate a disputed fact question of whether Dunsmore suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. Indeed, that was the only question to be decided by the jury, and thus it was the ultimate issue to be decided in the trial.

In its attempt to prove its case, the State elicited the undisputed facts underlying Dunsmore's repeat sexually violent offender status. It also inquired about particular details of the alleged offenses, which were not specifically admitted by Dunsmore in the course of pleading guilty to the sexually violent offenses that established his status as a repeat sexually violent offender, and which he denied at trial. The questioning by the State depicted an apparent contradiction between Dunsmore's guilty pleas and his denials about specific allegations. Moreover, the State's expert witness testified that Dunsmore had the behavior abnormality necessary to commit him as a sexually violent predator, basing that opinion in part on her understandings that Dunsmore refused responsibility for his crimes by denying he engaged in the behavior and by claiming to have been coerced into pleading guilty.

The record shows that at the beginning of trial, the State argued that Dunsmore should not be permitted to base his defense on a "collateral attack" of his convictions for offenses to which he pleaded guilty. But as trial progressed, the State impermissibly used the limine order as the proverbial "shield and sword" by eliciting evidence about collateral matters that never were proved to have been judicially admitted by Dunsmore, such as specific details relating to the underlying offenses. Furthermore, in the course of bolstering an expert opinion that Dunsmore had the behavior abnormality required to invoke the SVP Act, the State elicited the expert's testimony that he failed to accept responsibility for his offenses on the basis that he denied committing them and even claimed that his guilty pleas had been coerced. The testimony that Dunsmore failed to take responsibility strongly suggested that his denials and his claim of a coerced plea were false, and indeed the expert separately testified that he was a pathological liar.

Under these circumstances, it was an abuse of discretion to deny Dunsmore the opportunity to present his own evidence on these subjects. The testimony was not offered to collaterally attack his status as a repeat sexually violent offender, which was stipulated. And the testimony was highly relevant to refuting the State's case on the one issue which was disputed at trial: whether he suffered from a

behavior abnormality that made him likely to engage in a predatory act of sexual violence.[26]

Dunsmore contends that the trial court "hobbled his ability to challenge the allegation that he committed his attempted sexual assault offense 'for the primary purpose of victimization.'" The trial court's ruling did place an unjustified restraint on the scope of what he could present as part of his defense at trial. But because there was no dispute that Dunsmore was convicted of two sexually violent crimes, his explanation of why he pleaded guilty only could be considered by the jury in determining whether he had a behavioral abnormality that would make him likely to engage in a predatory act of sexual violence in the future. In addition to the circumstances surrounding the two offenses that Dunsmore denied committing, Dr. McGarrahan provided an abundance of additional information upon which she relied to form her opinion that he suffered from such an abnormality. This included the details of the sexual assault of Y.Q., which Dunsmore admitted at the proceeding, records detailing numerous prior convictions and allegations involving corruption of minors or attempted or completed sexual assaults, Dunsmore's deposition testimony, sex offender treatment records, records of prior evaluations of Dunsmore by other

---

[26]    *See Parr*, 557 S.W.2d at 102.

19

trained mental health professionals, and her own personal evaluation of him, along with numerous other sources.

Most of the substance of the excluded testimony was heard by the jury in one way or another. Dunsmore was able to deny to the jury many suggested details about the offenses, as well as the attempted assaults themselves, while confirming that he did in fact plead guilty to the charges. The implication with respect to the attempted assaults of C.H. and L.K. was that he pleaded guilty even though he was not actually guilty. The offer of proof included some additional detail, from Dunsmore himself, about his account that his guilty pleas were made under duress. But the jury heard testimony from Dunsmore on both days of the trial, and there was nothing about the offer of proof relative to the evidence the jury did hear that plausibly could have altered the jury's overall assessment of his credibility as to these matters. The proffered testimony relating to C.H.'s allegations about pornography was a collateral matter intended to undermine her overall credibility, but Dunsmore was able to present other evidence, through Felicia's testimony, that C.H.'s allegations were false.

Application of the harm standard is "less a precise measurement and more a matter of judgment."[27] Dunsmore's proffered explanations were relevant and

---

[27] *See, e.g.*, *Diamond Offshore Servs.*, 542 S.W.3d at 551.

admissible. Dunsmore's general assertion that he pleaded guilty to the attempted assaults of C.H. and L.K. even though he was not guilty of those offenses was communicated to the jury. He specifically denied that he groped C.H.'s breasts, or that he fondled her vagina or attempted to penetrate it with his finger, despite admitting that he pleaded guilty to attempting to sexually assault her. He specifically denied that he attempted to sexually assault L.K. despite admitting that he pleaded guilty to attempting to penetrate her vagina.

Dunsmore stipulated to the "criminal allegations" against him with respect to C.H. and L.K. Under circumstances quite similar to the allegations involving those two victims, Dunsmore also admitted that he forced his penis into Y.Q.'s vagina. He conceded that he pleaded guilty to misdemeanor indecent conduct with A.P., a juvenile. He also testified that he had to "take responsibility" for his convictions relating to C.H., L.K., and A.P, stating, "I'm owning it." He further admitted to the "criminal allegations" concerning C.H. and L.K. and "to the attack on" A.P. Given the wealth of other evidence presented by the State, in context of the entire record we cannot conclude that the excluded evidence was crucial to a key issue. While the trial court's regrettable tolerance of the State's shield-and-sword abuse of its boilerplate limine order was an abuse of discretion, we cannot conclude that it probably caused an improper judgment in this case. We therefore overrule Dunsmore's first issue.

21

## II. Exclusion of expert testimony refuting medical diagnosis

In his second issue, Dunsmore contends that the trial court erred by excluding testimony from his expert witness that would have challenged a key diagnosis made by the State's expert witness. Dr. McGarrahan testified about how she diagnosed Dunsmore with "other specified paraphilic disorder," specifically, "non-consenting paraphilia." During Dunsmore's case-in-chief, Dr. Tennison testified about his own diagnoses and reasoning, as well as his conclusion that Dunsmore did not have a behavioral abnormality and was not at a high risk for reoffending. During cross-examination by the State, Dr. Tennison refuted Dr. McGarrahan's diagnosis, and he was further questioned on the issue during Dunsmore's re-direct. During re-direct, the trial court sustained the State's objections that his testimony was cumulative. Dunsmore presented an offer of proof of the proposed testimony.[28]

---

[28] Dunsmore additionally argues that the paraphilia nonconsent diagnosis did not meet each of the factors in *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995). The court in *Robinson* provided a non-conclusive list of factors to be considered by the trial court in evaluating the reliability and relevance of scientific evidence to determine its admissibility. *Id*. at 557. However, a party must make an objection as to unreliability of an expert's testimony before trial or at the time it is offered, to preserve a complaint. *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002). Because Dunsmore did not raise this objection to the trial court, it has been waived. TEX. R. EVID. 103(a); TEX. R. APP. P. 33.1(a).

22

The trial court granted a directed verdict that Dunsmore is a repeat sexually violent offender, so the question for the jury was whether he suffers from the required behavioral abnormality.[29] The SVP Act does not specify how the State must prove this element.[30]

The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, or needlessly presenting cumulative evidence.[31] The trial court must consider whether the excluded testimony would have added substantial weight to the offering party's case.[32]

In response to questioning by the State, Dr. Tennison testified that he did not see any evidence to support the paraphilia diagnosis. He also testified that he did not recall ever diagnosing an individual with non-consenting paraphilia, and that although it technically could exist, it is generally "considered an illegitimate diagnosis." He further testified that non-consenting paraphilia is "rejected from the

---

[29]  *See In re Commitment of Bohannan,* 388 S.W.3d 296, 305 (Tex. 2012).

[30]  *Id.*; *see also In re Commitment of Dever*, 521 S.W.3d 84, 87 (Tex. App.—Fort Worth 2017, no pet.).

[31]  TEX. R. EVID. 403.

[32]  *See, e.g.*, *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 884 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

DSM" and "not recognized." On re-direct, defense counsel asked Dr. Tennison why he did not find Dr. McGarrahan's diagnosis to be appropriate. The State objected, noting that the testimony was cumulative and the question already had been asked and answered. The court allowed Dr. Tennison to "briefly" answer the question, and he responded:

> It's not a valid diagnosis because to make a valid diagnosis there has to be evidence. And there is absolutely no evidence that Mr. Dunsmore was aroused by the fact of nonconsent. He might have been aroused by the sex itself. But there is no evidence that he was aroused by the fact that the victims were nonconsenting and therefore that diagnosis is not valid.

This response was very similar to his assessment on cross-examination: "I see no evidence of him having a paraphilia because I don't see evidence of him being aroused by the fact of engaging in nonconsenting sex."

During the proffer, when asked the same question of why the nonconsent diagnosis was improper, Dr. Tennison explained that the nonconsent paraphilia diagnosis was rejected from three editions of the DSM, primarily because of its rarity, and he again stated that the diagnosis theoretically could be made. He further explained that evidence that the subject was sexually aroused by the nonconsent itself was necessary to the diagnosis, and why he did not believe such evidence was present in Dunsmore's case:

> Quite the contrary. Mr. Dunsmore disengaged upon there being the point of resistance. So there is no example of him continuing to force himself upon his victims and nor do I think they alleged that he did so.

24

They basically were able to fend him off and stop him very early in that interaction so there is no evidence that he was more invigorated or emboldened by their nonconsent.

The trial court did not abuse its discretion in concluding that the proffered testimony did not add substantial weight to Dunsmore's case. The trial court's decision was not arbitrary, as the State objected to the testimony as cumulative, and there was support for excluding it on that basis. Dr. McGarrahan and Dr. Tennison both testified to the rarity of the specific diagnosis of nonconsent paraphilia, and that it was not recognized in the DSM or previously had been rejected from it. Dr. Tennison also was able to communicate to the jury the requirements for a nonconsent diagnosis, that he did not find any evidence that Dunsmore met the requirements, and that he therefore found the diagnosis to be invalid. He was permitted to testify at length about his diagnoses and observations that would support a finding that Dunsmore does not suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Moreover, he did not deny that nonconsent paraphilia could be a valid diagnosis. We find no abuse of discretion in the trial court's exclusion of recapitulations of these opinions on redirect examination, and we overrule Dunsmore's second issue.

## III. Exclusion of testimony characterized as a "collateral attack"

In his third issue, Dunsmore argues that the court applied the doctrine of collateral estoppel too broadly in excluding his wife's testimony. He asserts that the

court erred by excluding the testimony of Felicia Dunsmore related to false (but collateral) allegations that Dunsmore had illegal pornography on his computer.

At trial, Felicia testified briefly about her relationship with Dunsmore, as well about false allegations that she and her friend C.H. made against him:

Q.      You made some allegations against Mr. Dunsmore, correct?

A.      Yes.

Q.      And what were those allegations?

A.      That he had hit me and that he sexually assaulted my friend. I went along with it . . . .

Q.      So when did he hit you?

A.      Never.

Q.      So were you present when Richard [Dunsmore] assaulted your friend?

A.      He never assaulted my friend.

The State objected on the basis that the testimony was "a collateral attack on the judgment." The court warned counsel that it "might have to sustain the objection . . . if it appears to be an attack on the underlying judgment."

Defense counsel continued his questioning of Felicia, and he asked her about allegations of Dunsmore possessing pornography on his computer. Before Felicia could substantively answer the questions, the State objected to hearsay, which was sustained.

In a subsequent offer of proof outside the presence of the jury, Felicia explained that because she thought it would help her regain custody of her child, she and C.H. made false allegations about Dunsmore possessing illegal pornography, and C.H. was coached to allege that Dunsmore touched her while she was sleeping. Felicia also testified that police took his computers, but she did not know of any pornography on them. She further testified that C.H., L.K., and Y.Q. all fabricated sexual-assault allegations against Dunsmore because they were "working together against him," they were drug addicts, and that's what "drug addicts do to people."

The State argued that the proffered testimony was "a collateral attack on the judgment," was based upon hearsay and speculation, and was not relevant. The court excluded the testimony.

Dunsmore argues that the proffered testimony was not a collateral attack on his prior conviction. Even if it were, he contends the State opened the door to the evidence by asking him on direct examination about the attempted assault on C.H. Felicia's proffered testimony was that the attempted assault on C.H. was a fabrication.

The State's questions during its direct examination of Dunsmore opened the door to further testimony on the circumstances surrounding the offenses and guilty pleas. Nevertheless, the trial court did not abuse its discretion in excluding Felicia's speculative testimony about why C.H., L.K., and Y.Q. fabricated sexual-assault

27

allegations against Dunsmore. In any case, in testimony that the jury did hear, Felicia stated several times that Dunsmore never assaulted her friend.

Moreover, while the State's direct examination of Dunsmore did open the door to testimony explaining his guilty plea, it did not also open the door addressing the pornography allegations. Evidence offered to "complete" a matter raised by the opposing party must be on the same subject and must be necessary to fully understand or explain the matter.[33] The State did not present any argument or evidence related to Dunsmore possessing or using pornography. Thus the only purpose of this proffered testimony was to attack C.H.'s general credibility by revealing that she told police he possessed pornography and that police were unable to substantiate that claim. The State's examination of Dunsmore did not touch upon the credibility of C.H., and thus the door was not opened to a collateral attack on her credibility in this way.[34] Therefore, we overrule Dunsmore's third challenge.

## IV. Denial of request to read State's admissions to the jury

In his remaining issues, Dunsmore asserts that the trial court erred by denying his requests to read certain State's admissions to the jury.

---

[33] *See* TEX. R. EVID. 107; *see also Washington v. State*, 856 S.W.2d 184, 186 (Tex. Crim. App. 1993).

[34] *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241–42 (Tex. 2010) (parties may not impeach on collateral matters).

In a civil trial a party may serve written requests that another party admit the truth of any matter within the scope of discovery.[35] This includes requests for admissions on statements of opinion or of fact, or of the application of law to fact or the genuineness of a particular document.[36] The purpose of requests for admission is to simplify trials.[37] They are most appropriately utilized in addressing uncontroverted matters that otherwise might be difficult or expensive to prove.[38] Responses to requests for admission may be read to the jury or otherwise entered into evidence.[39]

Dunsmore requested that State's admission no. 7 be read to the jury. The State admitted that: "Mr. M. R. Gunn was sued by Respondent Richard Dunsmore before Respondent's file was presented to the MDT." Gunn was a program specialist with the Texas Department of State Health, and "MDT" referred to the Multidisciplinary Team, which is a group of seven individuals from different disciplines or backgrounds who together determine whether an individual with two or more

---

[35]    TEX. R. CIV. P. 198.1.

[36]    *Id.*

[37]    *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011).

[38]    *Id.*; *see also Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950).

[39]    *See, e.g.*, *In re Commitment of Haines*, No. 09-15-00526-CV, 2016 WL 3356571, at *5 (Tex. App.—Beaumont June 16, 2016, no pet.) (mem. op.).

convictions for sexually violent offenses should be referred for evaluation of a behavioral abnormality upon his release from prison. Gunn sent Dunsmore a letter acknowledging receipt of his request for placement in a sex-offender treatment program and explaining the process by which offenders are prioritized for rehabilitation. The claimed relevance of this admission was that the State raised an issue about whether Dunsmore ever requested sex-offender treatment, he claimed that he did, and Gunn was the person who "sent him a response stating that he did not need it."

Dunsmore also requested that State's Admission no. 33 be read to the jury. It read: "Pennsylvania Complaint/Incident Number C03-06076229 involving [C.S.], the case was dismissed. SPU-01511." The claimed relevance was to indicate "the case was dismissed." Defense counsel conceded there was no controverting evidence to suggest otherwise.

Next, Dunsmore requested that State's admissions nos. 50, 51, and 52 be read to the jury. Those discovery responses admitted that Brazoria County authorities "confiscated a computer belonging to [Dunsmore] based on an allegation made by [C.H.]," that they "searched a computer owned by [Dunsmore] for illegal pornography based on an allegation made by [C.H.]," and that they "did not find any illegal pornography on [Dunsmore's] computer they ceased [*sic*], based on an allegation made by [C.H.]." Defense counsel explained that these admissions

30

substantiated the proffered evidence which had not been admitted, relating to an unsubstantiated allegation by one of his accusers that he possessed illegal pornography. On appeal, Dunsmore suggests these admissions would have cast doubt upon the veracity of C.H.'s accusation against him for sexual assault.

Finally, Dunsmore requested that the State's admission no. 65 be read. It said: "The State is in possession of no toxicology reports indicating Respondent drugged anyone for the purposes of engaging in sexual activity." Dunsmore argues that this admission should have been read to the jury to refute the State's contention that he used drugs to impair his sexual-assault victims.

The trial court, in its discretion, could have determined that none of these admissions were admissible, either because they were irrelevant or for some other reason. The fact that Dunsmore had sued Gunn did not tend to make it more or less probable that he had requested sexual-offender treatment.[40] Although there had been a rhetorical quarrel between the State's counsel and Dunsmore about the reason for the dismissal of the Pennsylvania complaint involving C.S., there was no dispute that it was, in fact, dismissed.[41] The admissions relating to C.H.'s allegation that Dunsmore possessed illegal pornography were a collateral matter that did not relate

---

[40]    *See* TEX. R. EVID. 401.

[41]    *See id.*

to any of the elements of the State's case and thus were inadmissible for the purpose of impeaching the credibility of C.H.[42] And toxicology reports were not required to prove the State's case, thus the undisputed absence of toxicology evidence did not tend to prove or disprove any fact of consequence. We therefore overrule all challenges to the trial court's refusal to allow Dunsmore to read admissions to the jury.

## Conclusion

We affirm the trial court's judgment and order of civil commitment.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Caughey.

---

[42] *See TXI Transp.*, 306 S.W.3d at 241–42.