**Affirm and Opinion Filed February 23, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

## No. 05-21-00795-CV

## IN RE: THE COMMITMENT OF WILLIARD JOEL ROBINSON

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. CV-2070008**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellant Willard Joel Robinson appeals the trial court's judgment civilly committing him for treatment and supervision pursuant to the Texas Civil Commitment of Sexually Violent Predators Act (SVP Act). *See* TEX. HEALTH & SAFETY CODE § 841.003. In four issues, Robinson argues: (1) the evidence was legally and factually insufficient to support a finding beyond a reasonable doubt that he is a sexually violent predator; (2) the trial court abused its discretion by sustaining the State's collateral estoppel objection during Robinson's testimony; and (3) it was an abuse of discretion to inform the jury of the trial court's directed verdict against Robinson and the inclusion of the instruction caused him prejudice. We affirm.

## SVP ACT COMMITMENT STANDARDS

In 1999, the Texas Legislature enacted the Civil Commitment of Sexually Violent Predators Act to protect the public from a "small but extremely dangerous group of sexually violent predators" who "have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." *Id.* § 841.001. The Act provides for the involuntary civil commitment, by means of outpatient treatment and supervision, of a repeat sexual offender who is found to be a sexually violent predator. *Id.* §§ 841.003(a), 841.081(a).

In a suit to commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person is (i) a "repeat sexually violent offender" and (ii) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a), 841.062(a). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* § 841.003(b); *see also id.* § 841.002(8) (defining sexually violent offense). A behavioral abnormality is a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. *Id.* § 841.002(2). A "predatory act" is an

"act directed towards individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5).

## BACKGROUND

In August of 2020, the State filed its petition to have Robinson deemed a sexually violent predator and have him civilly committed for treatment and supervision. *See* TEX. HEALTH & SAFETY CODE § 841.003. The focus at trial was Robinson's sexual offenses and the doctor's evaluation. At trial, the State called Doctor Antoinette McGarrahan and Robinson to testify.

## I.     Robinson's Sexual Offenses

The records showed Robinson's first sexual offense occurred when he was sixteen. The victim in the case was a thirteen-year-old girl. Robinson denied engaging in the offense but during a deposition, admitted to engaging in "essentially a gang rape of a thirteen-year-old female." He claimed he committed the offense because he feared the other gang members he was with and was trying to get involved with the gang. Robinson was sentenced to eighteen months in a juvenile facility for this offense.

The records showed Robinson's next offense was in 1998, when he was twenty-six and his victim was twelve. The victim was a family friend and he penetrated her vagina with his finger. Robinson denied committing the offense and stated the victim's grandmother had propositioned him sexually, but when he turned her down, she fabricated this offense. The victim in this case gave a statement to

police in 2014 regarding what had occurred. Although Robinson denied committing the offense, he was convicted of aggravated sexual assault of a child and sentenced to eight years' imprisonment. *See* TEX. PENAL CODE § 22.021.

His third sexual offense occurred in 2014. The victim in that case was Robinson's six-year-old biological daughter. Robinson denied committing this offense and stated his daughter's mother was seeing a man who was sexually abusing the victim. Robinson was also convicted of aggravated sexual assault in this case and sentenced to eight years' imprisonment. *See id*.

## II. Doctor McGarrahan

Dr. McGarrahan is a psychologist that specializes in forensic psychology and neuropsychology. The State hired her to conduct a risk assessment of Robinson and "provide her opinions and conclusions" regarding if Robinson suffered from a behavioral abnormality. Dr. McGarrahan explained she reviews records (including criminal, medical, and disciplinary records), interviews the individual face-to-face, talks with collateral individuals who might have relevant information about the person evaluated, and then conducts a risk assessment to determine if the individual is a psychopath or has psychopathic characteristics.

Dr. McGarrahan testified she interviewed Robinson by video conference for three hours. Based on that interview and her review of the records, Dr. McGarrahan concluded Robinson suffers from a "behavioral abnormality that makes him likely to commit predatory acts of sexual violence." She explained the two biggest risk

factors she looked for were "sexual deviance and antisociality or psychopathy." In determining Robinson's diagnosis, Dr. McGarrahan considered Robinson's criminal history, beginning with his juvenile criminal behavior. Dr. McGarrahan also reviewed the three sexual offenses Robinson was convicted of and his denial or excuses for involvement in them. She stated the sexual assault offenses are considered to be violent offenses according to statute.

Dr. McGarrahan testified she diagnosed Robinson with pedophilic disorder with attraction to females and explained it meant Robinson has "recurrent, intense sexually arousing fantasies or behaviors involving prepubescent children." Dr. McGarrahan would consider Robinson "non-exclusive" because his sexual relations included both adults and children. When asked if there was any evidence Robinson still suffers from pedophilic disorder, Dr. McGarrahan explained her concern was Robinson had "not been treated for this condition, he doesn't believe he's a sex offender and doesn't believe he needs treatment." She stated that pedophilic disorder is a "chronic condition" and had affected Robinson's "emotional or volitional capacity." Dr. McGarrahan also felt Robinson would be a "menace to the health and safety" of others.

She also diagnosed Robinson with "antisocial personality disorder with significant characteristics of psychopathy" which is a "persistent and inflexible pattern of behavior, maladapted behavior" that can be seen at home, work, or around other people. Robinson's criminal history was evidence of his personality disorder

because he consistently violated the rights of others, "being irresponsible, impulsive and not following the rules."

Dr. McGarrahan also identified psychopathic traits in Robinson. She explained antisocial personality combined with psychopathic characteristics is often what is referred to as a "sociopath, it sort of takes the antisocial to a higher level." Dr. McGarrahan diagnosed Robinson as sexually deviant with an antisocial personality disorder, which combined is what is considered to be "two of the highest risk factors for engaging in sexual violence."

Next, she testified to her conclusion that Robinson was likely to reoffend. Robinson admitted to using drugs or alcohol at the time of the sexual offenses. According to Dr. McGarrahan, using alcohol or drugs can cause one to be "more impulsive . . . sort of lower those inhibitions." Robinson had previously gone through a substance abuse treatment program but indicated he used drugs or alcohol while he was on probation or parole. In his deposition, Robinson stated it was hard for him to know if he would use drugs or alcohol in the future if he was released. Dr. McGarrahan believed use of drugs or alcohol would increase his risk to reoffend sexually.

Robinson's belief he was not a sex offender, did not need treatment for his sexual offenses, and "he wasn't sure what the future holds" when asked if he felt he would reoffend, coupled with his pedophilic and anti-social personality disorders caused Dr. McGarrahan to believe Robinson was at high risk to "engage in this

behavior in the future." She stated she believed Robinson had a "behavioral abnormality that makes him likely to engage in a predatory act of sexual violence."

## II.    Robinson

Robinson was the only other witness to testify at the hearing. He testified regarding his criminal history, stating he had been on probation, mandatory supervision/parole, state jail, and prison before. After going through his extensive criminal history, the State questioned Robinson about his first sexual offense. He stated he was attempting to join a gang "because I wasn't getting the love at the house." He admitted to sexually assaulting a thirteen-year-old girl who was tutoring him for school. Robinson explained that he only sexually assaulted the girl because he "feared for my life because I know the guys that I'm hanging around with they got guns."

Robinson stated the victim of the second sexual assault he was convicted of was his girlfriend's sister. He testified he went over to his friend's house because his girlfriend was supposed to be there. Robinson admitted he had been drinking and used marijuana that evening. He denied sexually assaulting the victim because the grandmother was also present in the room. Robinson said the grandmother offered him $200 to have sex with her so he left. He did not know if the grandmother contacted the police in 1998.

The third sexual assault was against his daughter in 2014. Robinson denied committing that offense. He stated he had smoked marijuana that day while he

babysat the victim. Robinson said the victim told him her mother's boyfriend was touching her and it was the second time she had told him that was occurring. He believes the victim lied to the police "because her mama told her" to do so.

Robinson admitted he had a problem with marijuana and alcohol and completed programs to help him. He stated he used cocaine, marijuana, and drank alcohol after completing the rehabilitation programs. Robinson testified he did not believe he was a sex offender, needed sex offender treatment, or had any future risk to commit a sex offense in the future.

On cross-examination, Robinson's defense attorney started to ask him why he pleaded guilty to two of his sex offenses. The State objected and asked to approach. A bench conference was held but not transcribed for this appeal. Following the bench conference, Robinson's counsel proceeding questioning him but did not ask why he pleaded guilty again. Robinson stated he did not have sexual attraction to little children, did not plan on selling drugs anymore, and did not want to return to jail following his release for these crimes.

### III. Directed Verdict and Judgment

Once both sides rested, Robinson made a motion to strike Dr. McGarrahan's expert testimony from the record because it did not meet the "criteria of the *Robinson* case or the analytical gap theory." The State responded Robinson was "arguing a credibility issue and that's an issue that the jury can weigh." The trial court denied Robinson's motion to strike.

At the close of the evidence, the State then moved for a directed verdict on the first issue, whether or not Robinson was a repeat sexually violent offender. The trial court stated the record was clear that he has two convictions for sexually violent offenses and granted the Motion for Directed Verdict. Robinson objected to the inclusion of the directed verdict in the jury charge and the trial court overruled that objection. The jury answered yes to the question that Robinson is a sexually violent predator. This appeal followed.

## ANALYSIS

Robinson brings four issues on appeal. We address each in turn.

### I. Sufficiency of the Evidence

By his first and second issues, Robinson argues the evidence is legally and factually insufficient to support his civil commitment.

### A. Standard of Review

"A commitment proceeding under the SVP Act is the unusual civil case incorporating the 'beyond a reasonable doubt' burden of proof typically reserved for criminal cases." *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020). We use the criminal test for legal sufficiency. *In re Commitment of Hill*, 621 S.W.3d 336, 339 (Tex. App.—Dallas 2021, no pet.); *see In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *2 (Tex. App.—Dallas Jan. 30, 2019, no pet.) (mem. op.). We review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the required elements

beyond a reasonable doubt. *In re Hill*, 621 S.W.3d at 339. It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences for basic to ultimate facts. *Id*.

The Texas Supreme Court clarified the standard of review for factual sufficiency in civil cases where, as here, the burden of proof is beyond a reasonable doubt. The court stated:

> We hold that a properly conducted factual-sufficiency review in a SVP case requires the court of appeals to determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is an SVP. In so doing, the appellate court may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony, and the court must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient to support the verdict.

*In re Stoddard*, 619 S.W.3d at 668.

## B. Legal Sufficiency

In his first issue, Robinson argues the testimony of Dr. McGarrahan was unreliable and unsupported by the evidence. Opinion testimony that is wholly conclusory or speculative amounts to no evidence "because it does not tend to make the existence of a material fact 'more probable or less probable.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). "Bare, baseless

opinions will not support a judgment even if there is no objection to their admission in evidence." *Id*. "When a scientific opinion is admitted into evidence with objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *Id*. at 818. "But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id*.

Dr. McGarrahan testified over the course of two days at Robinson's trial. When both sides stated they had no additional witnesses, Robinson then made a motion to strike Dr. McGarrahan's testimony arguing her opinion testimony was unreliable and it did not meet the analytical gap test. The State argues Robinson's reliability objection was untimely. A timely objection must be made to preserve a claim challenging the reliability of an expert's testimony of appeal. *In re Commitment of Dodson*, 434 S.W.3d 742, 750 (Tex. App..—Beaumont 2014, pet. ref'd. When there is a reliability challenge to an expert's opinion requiring the trial court to evaluate the underlying methodology, there must be a timely objection made so the trial court has the opportunity to conduct the analysis. *In re Commitment of Grunsfeld*, No. 09-09-00279-CV, 2011 WL 662923, at *6 (Tex. App—Beaumont Feb. 24, 2011, pet. denied). Here, because Robinson's objection was untimely, the trial court did not have the opportunity to evaluate the methodology used by Dr. McGarrahan before her testimony was admitted. *See id*. By failing to timely object,

Robinson waived appellate review of his complaint that Dr. McGarrahan's opinions were not reliable. *See* TEX. R. APP. P. 33.1(a).

Robinson also argues the "record does not support some of the conclusions made by Dr. McGarrahan because they were based on unwarranted assumptions." Robinson can still raise this no-evidence claim for the first time on appeal. *See Pollock*, 284 S.W.3d at 816.

To formulate her opinion on Robinson's risk for reoffending, Dr. McGarrahan testified that she reviewed extensive records, met with Robinson for three hours, and evaluated the assessment of another doctor, Dr. Stephen Thorne. Dr. McGarrahan stated she is a psychiatrist who had conducted over 200 of these types of evaluations for both the State and defense, as well as the Texas Department of Criminal Justice, at the time of the hearing. Dr. McGarrahan administered actuarial tests, and testified these types of tests are generally accepted in her field. She explained the facts and evidence she found relevant in evaluating her opinion and how those facts played a role in the evaluations. Dr. McGarrahan relied on records typically relied on by experts in her field and performed her evaluations according to her training. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *5 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.).

We conclude the record was sufficient to support Dr. McGarrahan's opinions. *See Pollock*, 284 S.W.3d at 817. Viewing the evidence in the light most favorable to the verdict, we hold that a rational jury could have found, beyond a reasonable doubt,

that Robinson suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violent. *See* TEX. HEALTH & SAFETY CODE §§ 841.002(2), 841.003(a); *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied). The evidence was legally sufficient to support the jury's finding. We overrule Robinson's first issue.

## C.    Factual Sufficiency

In his second issue, Robinson argues he did not fit the criteria for anti-social personality disorder. According to Robinson, he was not "above-average risk" for reoffending, he had no sexual disciplinary infractions during his time of incarceration, and years elapsed between his sexual crimes. He believes these facts show the determination he was likely to reoffend is not supported by the evidence.

We disagree. Although Robinson takes issue with some of the testimony of Dr. McGarrahan, the whole of the evidence supports the jury's finding. The facts Robinson challenges does not dispute Dr. McGarrahan's finding that Robinson has a behavioral abnormality. Any differing interpretations of Dr. McGarrahan's opinions are issues of credibility for the jury to determine. *See In re Stoddard*, 619 S.W.3d at 668. As a factfinder, it was within the province of the jury to weigh the evidence, judge the credibility of the witnesses' testimony, and resolve any conflicts in the evidence. *See In re Commitment of Williams*, 539 S.W.3d 429, 440–41 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Stoddard*, 619 S.W.3d at 668 (stating that, in conducting factual sufficiency review in a sexually violent predator

case, we "may not usurp the jury's role of determining the credibility of the witnesses and weight to be given their testimony."). The jury was free to believe all, part, or none of a witness's testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). We may not substitute our judgment for that of the jury. *See Stoddard*, 619 S.W.3d at 677. We presume the jury resolved any disputed evidence in favor of its finding that Robinson is a sexually violent predator. We overrule Robinson's second issue.

## II. Collateral Estoppel

In his third issue, Robinson claims the trial court erred by sustaining the State's collateral estoppel objection regarding portions of his testimony.

We review the evidentiary rulings of the trial court under an abuse-of-discretion standard. *In re Commitment of Dunsmore*, 562 S.W.3d 732, 739 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). A trial court abuses its discretion when it acts arbitrarily, without regard to any guiding rules or principles. *Id*. If we find there was an abuse of discretion, we will reverse only if we also find the trial court's error probably caused an improper judgment. *Id*. In making this determination, we are required to review the entire record. *Id*. The role that excluded evidence plays in the context of the trial is important. Thus, the exclusion of evidence "is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *Id*. But if erroneously excluded evidence was crucial to a key issue, then the error is likely harmful. *Id*.

Robinson argues he should have been allowed to testify regarding why he pleaded guilty to the sexual assault offenses even though he denied committing them. At trial, The State objected to defense counsel's questions on that issue and argued the questions violated the motion in limine and were barred by collateral estoppel. Robinson argued the State opened the door to the questioning. The trial court sustained the State's objection.

Robinson cannot challenge the facts of his final criminal conviction in his civil commitment proceeding. *See In re Commitment of Coles*, No. 02-21-00173-CV, 2022 WL 14996544, at \*7 (Tex. App.—Fort Worth May 12, 2022, no pet.); *In re Commitment of Eeds*, 254 S.W.3d 555, 557–58 (Tex. App.—Beaumont 2008, no pet.) (holding a defendant in sexually violent predator proceeding could not attack accuracy of statement in criminal judgment that conviction was for indecency by contact, where that judgment had not been reversed, corrected, or set aside). Evidence of the facts or details underlying sexual assault offenses may be admissible in civil commitment proceedings "when such evidence would assist the jury in understanding an expert's opinion testimony that a respondent suffers from a behavioral abnormality." *In re Dunsmore*, 562 S.W.3d at 739–40.

In *Dunsmore*, defense counsel made a bill of review regarding the testimony they sought to admit. *See id*. at 739. In this case, the trial court was willing to allow Robinson to present testimony in the form of an offer of proof, but Robinson declined and presented no additional testimony regarding why he pleaded guilty to

–15–

the sexual offenses. Because Robinson chose not to present evidence under a bill of review, the trial court did not have additional information on which to base its ruling. Based on the record before us, without knowing what proposed evidence Robinson now wishes to have introduced, the objected-to testimony was properly excluded and the trial court did not err by sustaining the State's objection and limiting Robinson's cross-examination testimony. We overrule his third issue.

## IV. Directed Verdict

The trial court granted the State's directed verdict and ruled Robinson was a repeat sexually violent offender. By his fourth issue, Robinson argues the trial court abused its discretion by modifying the jury charge to inform the jury of the directed verdict against him. The jury charge included the following instructions:

> You are instructed that a person is a "Sexually Violent Predator" for the purposes of Chapter 841 of the Texas Health and Safety Code if the person:
>
> 1.   is a repeat sexually violent offender; and
>
> 2.   suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.
>
> A person is a "repeat sexually violent offender" for the purposes of Chapter 841 of the Texas Health and Safety Code if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of those offenses.
>
> . . . .
>
> DIRECTED VERDICT GRANTED BY THE COURT

The Court has granted a directed verdict that WILLARD JOEL ROBINSON has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of those offenses. Therefore, he is a "repeat sexually violent offender" under the law.

Robinson alleges, for the first time on appeal, the wording of the jury instruction "may have confused the jury regarding what they were supposed to be determining." The State maintains Robinson did not make proper objections to the jury charge, and any error was harmless due to the multiple instructions to the jury regarding what they were required to determine. Specifically, the State argues the instruction was harmless because the jury was told throughout the trial that the only issue they would be deciding was if Robinson was a sexually violent predator and the charge clearly set out the factors necessary for the jury to make that determination: (1) is Robinson a repeat sexually violent offender and (2) does Robinson have a behavioral abnormality.

We conclude the trial court committed no error by including the directed verdict instruction in the charge. Although a defendant has an absolute right to a jury trial in sexually violent predator commitment cases, when there is undisputed evidence establishing a defendant has been convicted of more than one sexually violent offense and a sentence was imposed for one of those convictions, a person's status as a sexually violent predator is a legal determination appropriate for a partial directed verdict. *In re Commitment of Perdue*, 530 S.W.3d 750, 754 (Tex. App.—Fort Worth 2017, pet. denied) (holding the trial court did not err by granting directed

–17–

verdict on repeat sexually violent offender element); *In re Commitment of Shelton*, No. 02-19-00033-CV, 2020 WL 1887722, at *12 (Tex. App.—Fort Worth April 16, 2020, no pet.) (same). Here, the evidence was undisputed that Robinson had been convicted of more than one sexually violent offense and a sentence was imposed for one of those convictions. The trial court, therefore, did not err by granting the directed verdict. Further, we conclude the trial court did not err by including the instruction in the charge. We overrule Robinson's fourth issue.

## CONCLUSION

Based on this record, we find the evidence was legally and factually sufficient to support Robinson's civil commitment. Additionally, the trial court did not err by sustaining the State's collateral estoppel objection or by including information regarding the directed verdict in the jury charge. We overrule Robinson's issues and affirm the judgment of the trial court.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

210795F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN RE: THE COMMITMENT OF
WILLIARD JOEL ROBINSON,

No. 05-21-00795-CV

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. CV-2070008.
Opinion delivered by Justice Partida-
Kipness. Justices Molberg and
Carlyle participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 23rd day of February 2023.