**Opinion filed November 18, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00011-CV
_____

## IN RE COMMITMENT OF JOEL WAYNE BLAKENEY

**On Appeal from the 32nd District Court**

**Nolan County, Texas**

**Trial Court Cause No. 19989**

### MEMORANDUM OPINION

This appeal stems from a civil commitment order. Appellant, Joel Wayne Blakeney, was previously convicted of three counts of indecency with a child, second-degree felonies, *see* TEX. PENAL CODE ANN. § 21.11 (West 2019), and was sentenced on each count to eighteen years running concurrently in the Institutional Division of the Texas Department of Criminal Justice. Once Appellant's sentence was nearing completion, the State petitioned to have Appellant civilly committed as a sexually violent predator. A person is a sexually violent predator, and may be civilly committed as such, if the person is (i) a repeat sexually violent offender and

(ii) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. TEX. HEALTH & SAFETY CODE ANN. § 841.003(a) (West 2017). A jury unanimously found beyond a reasonable doubt that Appellant is a sexually violent predator. The trial court thereafter ordered that Appellant be civilly committed until he is "no longer likely to engage in a predatory act of sexual violence."

Appellant asserts two issues on appeal: (1) that the trial court abused its discretion in admitting evidence of Appellant's seropositive[1] status for HIV because it was unfairly prejudicial and (2) that the trial court abused its discretion in excluding, on grounds of collateral estoppel, Appellant's testimony explaining why he pleaded guilty to the aforementioned offenses. We affirm.

*Background Facts*

Before trial, both parties filed motions in limine. The State, in its motion, asked the trial court to bar Appellant from referring to, making any statements about, or otherwise putting before the jury (1) "[a]ny explanation of mitigating circumstances respecting prior convictions including, but not limited to, denial of commission of offense(s)" and (2) "[a]ny mention of any plea bargaining process, . . . including [Appellant's] reasons for pleading guilty to any of his underlying convictions," on the grounds that the doctrine of collateral estoppel precludes such efforts. The trial court granted the State's motion in this respect. Citing Rule 403 of the Texas Rules of Evidence, Appellant, in his motion, requested that the State be prohibited from making "[a]ny mention that [Appellant] may be HIV-positive, as it is extraordinarily prejudicial and lacks any discernible probative value." The trial court also granted Appellant's motion, in this respect.

---

[1] "[A]dj. [G]iving a positive (or negative) result in a test of blood serum, especially for the presence of a virus." *Seropositive (or seronegative)*, OXFORD ENGLISH DICTIONARY (7th ed. 2012).

A. Appellant's Explanation of Guilty Pleas

On the first day of trial, outside the presence of the jury, Appellant's trial counsel objected to the trial court's decision to preclude Appellant from discussing why he chose to plead guilty to three counts of indecency with a child. The trial court determined that Appellant "may explain why he made the decision" to plead guilty, insofar as he does not attack his attorney. When, during Appellant's testimony, his trial counsel attempted to offer Appellant's explanations for pleading guilty, the State renewed its objection. Appellant did testify, however, that he left the victims' mother because she was "doing drugs" and "beating on her kids all the time, and [he] got tired of being around it," and that, in retaliation, the mother "made up some lies" which led to his convictions for indecency with her children. The rest of Appellant's explanations were postponed for an offer of proof outside the presence of the jury.

During that offer of proof, Appellant sought to testify to the following things: (1) that it was the victims' aunt who accused him of indecency with the children; (2) that the victims' mother was in jail when the offenses were alleged to have taken place; (3) that Appellant was in San Angelo when the offenses were alleged to have been committed in Sweetwater; and (4) that Appellant took his attorney's advice and wound up in prison as a result. The State renewed its objection that the testimony constituted a collateral attack on Appellant's convictions, and the trial court sustained the objection, ruling that: "Inasmuch as the proper [sic] testimony is rife with hearsay, I'm going to continue to sustain the objection, and we're not going to allow the testimony that's been proffered." Notably, during the State's examination of Appellant, much of the substance of Appellant's excluded testimony was introduced, including Appellant's assertion that he did not commit the offenses, that

he only pled guilty because his attorney advised that he should, and that he was not even in the same city on the date that the offenses allegedly took place.

B. HIV Positive—Relevance to State's Expert's Opinion

Before trial and outside the presence of the jury, the State objected to the trial court's ruling on Appellant's motion in limine, which precluded any mention of Appellant's seropositive status for HIV, or the attempt to explain that the State's expert used that information in scoring Appellant's level of psychopathy, which in turn was used to determine whether Appellant suffers from a behavioral abnormality. The trial court ordered that a proffer of testimony outside the presence of the jury take place.

During that proffer, Appellant's trial counsel asked the State's expert, Dr. Jason Dunham, whether Appellant's seropositive status for HIV was relevant to his conclusion that Appellant suffers from a behavioral abnormality that renders him likely to commit future acts of predatory sexual violence. Dr. Dunham explained that it was relevant because Appellant had been diagnosed as being HIV positive during his most recent commissions of indecency with a child when he allegedly penetrated with his penis the sexual organ of one of the victims, which is "callous behavior" and "definitely a psychopathic feature." Upon further questioning by Appellant's trial counsel, Dr. Dunham also conceded that Appellant's psychopathy score would not have changed had Appellant not believed that he was HIV positive during his indecencies with the child victims, nor would that change his ultimate conclusion that Appellant suffers from a behavioral abnormality that makes him likely to commit future acts of predatory sexual violence. Appellant renewed his objection that the evidence was not necessary and was unfairly prejudicial. The trial court concluded that the probative value of the testimony substantially outweighed any prejudicial effect. The testimony was subsequently presented to the jury over

4

Appellant's running objection, and Appellant's trial counsel cross-examined Dr. Dunham about it.

*Discussion*

*I. Issue One – Admission of Appellant's HIV Positive Status under Rule 403; No Abuse of Discretion.*

A. *Standard of Review*

Generally, "all relevant evidence is admissible." TEX. R. EVID. 402. In Texas, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401. In determining whether evidence is relevant, courts must "examine the purpose for which the evidence is being introduced," to ensure that there is "a direct or logical connection between the actual evidence and the proposition to be proved." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). However, under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." TEX. R. EVID. 403. Rule 403 "favors the admission of relevant evidence and carries a presumption that relevant evidence [is] more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) (op. on orig. submission)).

When determining the admissibility of evidence under Rule 403, "trial judges must balance the probative value of the evidence against relevant countervailing factors." *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018). We reverse a trial court's determination under Rule 403 "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392 (op. on reh'g)). A Rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the

evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Walter v. State*, 581 S.W.3d 957, 978 (Tex. App.—Eastland 2019, pet. ref'd). Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd).

By its express terms, evidence is not excludable under Rule 403 because it is merely prejudicial—the rule only applies to evidence that is *unfairly* prejudicial. *Walter*, 581 S.W.3d at 978. Indeed, "in our adversarial system, much of a proponent's evidence is legitimately intended to wound the opponent." *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 549 (Tex. 2018). Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Error in the admission of evidence is reversible "only when harmful," and appellate courts will find harm when the error "probably caused the rendition of an improper judgment." *Diamond Offshore Servs.*, 542 S.W.3d at 551; *see also* TEX. R. APP. P. 44.1(a) (error is reversible if it (1) probably caused an improper judgment to be rendered or (2) probably prevented the appellant from properly presenting his case on appeal). This standard is "less a precise measurement and more a matter of judgment." *Diamond Offshore Servs.*, 542 S.W.3d at 551.

B. *Analysis*

Appellant argues that the trial court abused its discretion by admitting testimony regarding Appellant's seropositive status for HIV because that testimony was substantially more prejudicial than probative. In fact, Appellant contends that

Dr. Dunham's testimony regarding Appellant's HIV status "added no probative value" because it "made not one iota of difference" to Dr. Dunham's calculation of Appellant's score on the Psychopathy Checklist Revised (PCLR), nor did it alter his opinion that Appellant suffers from a behavioral abnormality that increases his risk of committing predatory acts of sexual violence in the future. Appellant's argument is flawed insofar as it assumes that evidence lacks probative value unless it is a "but for" cause in the PCLR scoring by the expert. Evidence does not lack probative value simply because it cannot carry the day on its own.

In this case, the consequential fact was whether Appellant suffered from a behavioral abnormality that made him more likely to commit acts of predatory sexual violence in the future. HEALTH & SAFETY § 841.003(a)(2). The State relied on Dr. Dunham's testimony to show that Appellant suffers from such a behavioral abnormality. Dr. Dunham's opinion was based, in part, on Appellant's high score on the PCLR, which measures psychopathy. That high score was founded in part on Dr. Dunham's determination that Appellant's criminal history demonstrates a high degree of callousness and a lack of empathy. Exposing children to HIV is an example supporting Dr. Dunham's opinions on Appellant's callousness and lack of empathy. Dr. Dunham considered Appellant's decision to sexually assault children when Appellant believed that he was HIV positive, alongside evidence of other acts of violence committed by Appellant toward prior victims, to demonstrate why Appellant was determined to be, in fact, callous.

Appellant's belief that he had HIV during the commission of the underlying indecency offenses was not a "but for" cause of Dr. Dunham's decision to score Appellant high for callousness and psychopathy. However, this fact does not diminish the probative value of the fact that Appellant sexually violated and exposed children while being aware of his seropositive status for HIV. Even if Appellant's

HIV status did not alter Dr. Durham's scoring, Dr. Dunham explained that Appellant's awareness of his HIV status at the time he sexually assaulted children demonstrates a callousness toward his victims that is indicative of psychopathy. Thus, Appellant's HIV status, under these circumstances, tends to make his psychopathy demonstrable and more probable. Appellant's psychopathy was the predominant factor in Dr. Dunham's ultimate opinion that Appellant has a behavioral abnormality—an essential element necessary for civil commitment as a sexually violent predator. *See* HEALTH & SAFETY § 841.002(a)(2). Appellant's HIV status, therefore, tended to make it more probable that Appellant qualified as a sexually violent predator. Therefore, Dr. Dunham's testimony that Appellant believed he was HIV positive during the commission of his most recent offenses against a child was highly probative.

Even though Appellant's HIV status was probative, in this case, the trial court was still required to exclude the evidence if its probative value was substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Appellant argues that because the jurors were not questioned on their ability to be fair to someone with HIV, it was impossible to predict how they would use that information in their decision-making process. Appellant asserts that, by and large, "Texas's statutory law prohibits the disclosure of a person's seropositive status," the implication being that the same should hold true in the context of an evidentiary ruling under Rule 403. The reason for this statutory consistency, Appellant asserts, is that:

> Public reaction to those afflicted with HIV is often negative and isolating due to the high-risk activities that can contribute to the transmission of the virus. Because of social stigmatization associated with HIV, privacy is of the utmost importance for those infected.

Appellant's argument seems to be that Dr. Dunham's testimony regarding Appellant's seropositive status for HIV may prejudicially imply to a jury Appellant's

high-risk activities such as having unprotected sex or sharing used needles with others and the like. But jurors in this case were informed of Appellant's long criminal history, from his first juvenile adjudication for indecency with a child when he was fourteen years old to his most recent conviction for three counts of indecency with a child. The evidence presented to the jury showed the high-risk and stigmatized activities that Appellant actually engaged in; therefore, any harm would be minimal in revealing defendant's seropositive status. Moreover, the type of conduct a jury may unfairly attribute to and hold against a defendant, upon learning that he tested positive for HIV, carries significantly less stigma than Appellant's multiple convictions for indecency with a child.[2] The fact that Appellant believed that he was HIV positive when his three most recent offenses for indecency with a child took place, potentially saddling the child with a permanent disease, reinforces the probative value that this evidence had for demonstrating Appellant's callousness.

Appellant advances other arguments but none are convincing.[3] Appellant suggested, without arguing, that the State's use of Appellant's seropositive status for HIV "surely violated HIPAA's privacy rule as to [Appellant's] protected health information." However, the State correctly points out that Appellant waived any

---

[2]"Because HIV-positive individuals are often stereotyped as drug users or homosexuals, revealing HIV status potentially exposes an individual to stigmatization, discrimination and intolerance." Stacey D. Blayer, *But Names Will Never Hurt Me: HIV Surveillance & Mandatory Reporting*, 39 B.C. L. Rev. 1175, 1200 (1998).

[3]Appellant invites this court to rely on an unpublished case in which the Minnesota Court of Appeals rejected the State of Minnesota's argument that "a nexus existed between [defendant's] HIV+ status and his alleged proclivity for public masturbation." *See State v. Pinkal*, No. C6-00-508, 2001 WL 55463 (Minn. Ct. App. Jan. 23, 2001) (not designated for publication). Not only is this case unpublished and from another state, it is also inapposite. In *Pinkal*, the State sought to admit evidence of defendant's seropositive status for HIV and elicit testimony that masturbation is the safest form of sex for someone with HIV, in order to establish "a motive or . . . likelihood that [defendant] was in fact masturbating[]" in public on the date of the alleged offense. *Id.* at *4. By contrast, in the case before us the State did not seek to use Appellant's seropositive status for HIV as evidence of his likelihood to commit acts of predatory sexual violence. Rather, the State offered Dr. Dunham's testimony to demonstrate how Appellant's psychopathy score, carrying a weighty callousness and behavioral abnormality factor, was calculated.

argument regarding his alleged invasion of privacy. Appellant did not make any objection at trial on the grounds of invasion of his protected health information under the Health Insurance Portability and Accountability Act (HIPPA). To preserve an error for appellate review, the complaining party must make a specific objection in the trial court and the argument made in the trial court must comport with the argument made on appeal. *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 728 (Tex. App.—Eastland 2019, pet. denied); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.). We need not wade into the merits of Appellant's HIPAA assertion, as no objection on that basis was made at trial. *See* TEX. R. APP. P. 33.1(a).

Because the danger of unfair prejudice did not substantially outweigh the probative value of Dr. Dunham's testimony regarding Appellant's seropositive status for HIV, we hold that the trial court, under these circumstances, did not abuse its discretion by admitting this testimony.

Even if this evidence had been substantially more prejudicial than probative such that it should have been excluded, a reversal would be warranted only if its admission "probably caused the rendition of an improper verdict" or "probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a); *see also Diamond Offshore Servs.*, 542 S.W.3d at 551. A trial court's error in admitting or excluding evidence is reversible only when it is harmful, "that is, if the error probably caused the rendition of an improper judgment." *Diamond Offshore Servs.*, 542 S.W.3d at 551. This standard is imprecise and ultimately a matter of judgment for appellate courts. *Id.* Error is harmless "if the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *JBS Carriers*, 564 S.W.3d at 840.

We conclude that the weight of the evidence in this case is overwhelmingly against Appellant such that admission of Dr. Dunham's HIV status testimony, even if erroneous, was harmless. Therefore, the trial court did not abuse its discretion in admitting Dr. Dunham's testimony on this matter. We overrule Appellant's first issue.

*II. Issue Two – The trial court did not abuse its discretion in excluding Appellant's explanations as to why he pleaded guilty to offenses. Error, if any, was harmless.*

A. *Standard of Review*

Whether to admit or exclude evidence is "within the trial court's sound discretion." *Nat'l Liability & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). Thus, on appeal, "we review a trial court's evidentiary decisions by an abuse of discretion standard." *Id.* at 527–28. For the exclusion of evidence to constitute reversible error, "the complaining party must show that (1) the trial court committed error and (2) the error probably caused the rendition of an improper judgment." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *see also* TEX. R. APP. P. 44.1(a) (error reversible if it (1) probably caused an improper judgment to be rendered or (2) probably prevented the appellant from properly presenting his case on appeal). It is impossible to prescribe a specific test to determine whether the exclusion of admissible evidence is harmful; hence, that determination is "entrust[ed] . . . to the sound discretion of the reviewing court." *Cent. Expressway Sign*, 302 S.W.3d at 870. We review the entire record to gauge "the importance of the excluded evidence." *Diamond Offshore Servs.*, 542 S.W.3d at 551. Exclusion of admissible evidence is likely harmless "if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *JBS Carriers*, 564 S.W.3d at 840 (quoting *Gunn v.*

*McCoy*, 554 S.W.3d 645, 668 (Tex. 2018)). However, "the exclusion is likely harmful if it was 'crucial to a key issue.'" *Id.* (quoting *Gunn*, 554 S.W.3d at 668).

Collateral estoppel prohibits relitigating an ultimate issue of fact that has been determined by a valid and final judgment. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). A collateral attack is "an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). "[A] plea of guilty, as opposed to a conviction after trial, also collaterally estops a plaintiff from relitigating his guilt, since 'a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime.'" *Johnston v. Am. Med. Int'l*, 36 S.W.3d 572, 576 (Tex. App.—Tyler 2000, pet. denied) (quoting *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374 (5th Cir. 1997)).

B. *Analysis*

The State argues that this issue is not properly before us because the trial court excluded Appellant's testimony on hearsay grounds. The trial court, in sustaining the State's collateral estoppel objection, made the following ruling:

> THE COURT: Inasmuch as the proper [sic] testimony is rife with hearsay, I'm going to continue to sustain the objection, and we're not going to allow the testimony that's been proffered. Objection to it is sustained.

Appellant's testimony was well-developed and consists of almost 100 pages of the reporter's record. The parties thoroughly questioned Appellant about his offenses, violence, jail time, and prison disciplinaries. Impeachment and rehabilitation occurred without following evidentiary formalities, and the trial court was extremely patient with the opposing counsel.

12

### 1. The record is unclear

The statement in the trial court's ruling, "I'm going to continue to sustain the objection" alludes to previous rulings, but the record includes several instances during the questioning of Appellant by his trial counsel when the State announces: "Objection" but then the statement of the specific objection and the court's ruling, if any, is made off the record. Accordingly, we cannot discern what other bases upon which the objections by the State were made and what objections the trial court "continue[d] to sustain." If a collateral attack or a hearsay objection was sustained, there followed no instruction to the jury to disregard Appellant's answers. At one point, the trial court instructed the jury that the court was going to allow Appellant to testify as to conversations but that such testimony was not offered for the truth of the matter asserted—rather, it showed only Appellant's understanding of the event or conversation. It was not until the last two pages of the record in Appellant's offer of proof that the trial court clarified its continued rulings that were previously made off the record and/or based on hearsay. We note that, although no hearsay objections were made during Appellant's bill, such objections had loosely been made during previous questioning.[4] The recorded objection by the State to the bill addressed Appellant's attempted collateral attack of his convictions. Further, the trial court appears to have globally excluded Appellant's testimony, at least in part, as being "rife with hearsay."

### 2. *Dunsmore* and collateral attack on prior convictions

The State argues the inapplicability of *In re Commitment of Dunsmore*, 562 S.W.3d 732 (Tex. App.—Houston [1st Dist.] 2018, no pet.), but in the alternative, argues that there was no harm, because the exclusion of Appellant's explanations did not probably result in an improper judgment. Appellant, however, contends that

---

[4]But not to the questions as *rephrased* in the offer of proof.

the trial court abused its discretion by excluding, on the basis of collateral estoppel, Appellant's testimony explaining why he pleaded guilty to three counts of indecency with a child but denied committing certain acts of those offenses when questioned by the State. We note from the outset that the record is devoid of any direct question to Appellant of why he pleaded guilty to those charges. Regardless, Appellant advances two arguments.

Appellant first contends that collateral estoppel does not apply because the facts sought to be introduced or contradicted by Appellant's excluded testimony were not elemental to his convictions for indecency with a child. In an examination of the full record, we hold that collateral estoppel does indeed apply.

A person commits the second-degree felony offense of indecency with a child if, with a child under the age of seventeen years, the person engages in sexual contact. PENAL § 21.11(a)(1), (d). Appellant pleaded guilty to three second-degree felony counts of indecency with a child. Yet, at his civil commitment trial, Appellant denied that he found the victims sexually attractive and denied that he ever touched them inappropriately within the meaning of the statute. Moreover, Appellant sought (1) to introduce an alibi that he was in another city when the offenses were said to have occurred and (2) to contend that he only pled guilty at the recommendation of his attorney. The facts Appellant denied thereby were essential and necessary to establishing the factual basis for Appellant's guilty pleas. The information he sought to introduce in his excluded testimony effectually served to dispute and contradict those same facts he affirmed to be true in his prior guilty pleas. Thus, Appellant's proffered testimony was an improper collateral attack on his final convictions for indecency with a child.

Alternatively, Appellant argues that the trial court abused its discretion by excluding his proffered testimony after the State had opened the door by questioning

Appellant about various details of his offenses and eliciting denials. Appellant argues that allowing the State to elicit Appellant's denial and details of the offenses, and then use collateral estoppel to prevent him from offering any explanation, enabled the State to abusively use collateral estoppel as both a sword and a shield. *See Dunsmore*, 562 S.W.3d at 742. The State propounded questions limited to Appellant's pleas of guilty and subsequent convictions staying within proper bounds so as not to open the door that otherwise might allow Appellant to provide explanation to the jury as to why he pled guilty. A review of the entire record, however, shows that the State, in its follow-up questions of the details relating to the underlying offenses, may have exceeded those boundaries.

In *Dunsmore*, the appellant pled guilty to sexual assault and the State later petitioned for his civil commitment. *Id.* at 735. The trial court granted the State's motion in limine, barring Dunsmore from offering any "explanation . . . regarding prior convictions including, but not limited to, denial of commission of offense(s)." *Id.* at 736. At trial, however, the State asked Dunsmore about specific details of his offenses, which elicited denials. *Id.* at 741. Dunsmore, arguing that the State had opened the door, sought permission to explain his denials notwithstanding the limine order. *Id.* The trial court ruled that Dunsmore was collaterally estopped "from explaining . . . [the] reasons for his guilty plea." *Id.* On appeal, the court held that this was an abuse of the trial court's discretion, explaining that inadmissible evidence "may become admissible when a party 'opens the door' by creating a false impression with the jury that invites the other side to respond." *Id.* (citing *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009)). The court determined that the trial court had allowed the State to "impermissibly use the limine order as the proverbial 'shield and sword' by eliciting evidence about collateral matters that never were proved to have been judicially admitted by Dunsmore, such as specific

details relating to the underlying offenses." *Id.* at 742. The court emphasized that Dunsmore's testimony "was not offered to collaterally attack his status as a repeat sexually violent offender, which was stipulated." *Id.*

Here, even though the parties did not stipulate that Appellant was a repeat sexually violent offender, in the lengthy examination by the State, Appellant largely conceded the point. Appellant contends that he sought to explain why he denied committing those offenses for which he pled guilty, the basic facts of which he confirmed to be true. The litany of convictions explored in the jury's presence were necessary to establish Appellant's status as a repeat sexually violent offender. While *Dunsmore* stands for the proposition that, under specific circumstances, the State may open the door for testimony on matters that are otherwise collaterally estopped in a civil commitment proceeding, those circumstances are not present in this case. In any event, if the State opened the door to permit Appellant to offer "explanatory" testimony, Appellant failed to walk through it. The record demonstrates that Appellant proffered minimal explanation concerning the reasons for his pleas of guilty.

### 3. The exclusion was harmless

Importantly, the exclusion of testimony was ultimately harmless in *Dunsmore*. In that respect, *Dunsmore* <u>does</u> apply in the matter before us. Even if the State had opened the door and Appellant's testimony was admitted, the trial court's exclusion of that testimony was harmless.

Here, as in *Dunsmore*, "[m]ost of the substance of the excluded testimony was heard by the jury in one way or another." *Id.* at 743. Appellant wanted to testify that on the day the offenses took place in Sweetwater, he was in San Angelo; that he was the victim of false accusations; and that he pleaded guilty because he took his attorney's advice. Nevertheless, during the State's examination, Appellant managed

to present all of this information to the jury. As such, we cannot avoid the conclusion that the excluded evidence was cumulative. Viewing the entire record, "the importance of any offered but excluded evidence" is slight. *Diamond Offshore Servs.*, 542 S.W.3d at 551. Appellant admits in his briefing that the facts sought to be introduced or contradicted by Appellant's excluded testimony "were not elemental to his convictions." We agree.[5] Its exclusion "likely made no difference in the judgment." *JBS Carriers*, 564 S.W.3d at 840. Accordingly, even if the trial court erroneously excluded Appellant's testimony, such error in this instance was harmless. We overrule Appellant's second issue.

### This Court's Ruling

For the reasons stated above, we affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

November 18, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[5] What Appellant attempted to establish in his offer of proof was that on July 4th he was in San Angelo, not Sweetwater. Although not expressly stated, he impliedly concludes that it would have been impossible for him to have committed the offending acts by connecting hearsay facts learned from his brother: that the children's mother was arrested July 4th and that the children were at a birthday party in Sweetwater, Texas, where Appellant's acts of indecency with a child were alleged to have occurred. Without the hearsay information from Appellant's brother, which was properly excluded by the trial court, the link is lost between the alleged exculpatory facts. Further, Appellant accepted his attorney's advice and, although not stated, implied that is why he pled guilty.