**Opinion issued June 26, 2025**



In The

# Court of Appeals

For The

## First District of Texas

—————————————

### NO. 01-23-00539-CV

—————————————

## IN RE COMMITMENT OF LARRY DARNELL FULTON

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 0939515Z**

---

## MEMORANDUM OPINION

This is an action under the Texas Civil Commitment of Sexual Violent Predators Act.[1]  A jury found beyond a reasonable doubt that Larry Darnell Fulton is a sexually violent predator, and the trial court rendered final judgment on the verdict and issued a commitment order.  Fulton argues that the trial court abused its

---

[1]    *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.153.

discretion by excluding certain testimony from the State's expert witness and from Fulton himself.

We affirm.

## Background

In February 2022, the State filed a petition to civilly commit Fulton as a sexually violent predator. In its petition, the State alleged that Fulton had been convicted of three sexually violent offenses. According to the State, Fulton committed the first offense of rape in October 1981 (1982 conviction), the second offense of sexual assault of a child in August 1996 (1996 conviction), and the third offense of aggravated sexual assault of a child also in August 1996 (2004 conviction).

Two witnesses testified at the jury trial: the State's expert, Dr. Michael Arambula, and Fulton himself. Dr. Arambula, a licensed medical doctor and board-certified specialist in forensic psychiatry, opined that Fulton suffers from "a behavioral abnormality that made him likely to engage in a predatory act of sexual violence." Dr. Arambula based his opinion on law enforcement reports, court documents, prison records, a previous psychological evaluation of Fulton, his own interview of Fulton, Fulton's deposition, and the "static history of what [Fulton] did and his conviction[s]," as well as "[d]ynamic risk factors" for reoffending.

2

Dr. Arambula testified that he considered and relied on the underlying facts of Fulton's sex offenses in arriving at his opinion. Dr. Arambula testified that Fulton's first offense, a rape that occurred in Harris County in October 1981, involved a 17-year-old girl, C.F., who was at a bus stop when she was approached by Fulton and another man. They threatened her with a weapon, took her to another location, and forced her to engage in oral and vaginal sex. When Dr. Arambula interviewed Fulton about this offense, Fulton denied that it happened. But Dr. Arambula testified that when Fulton was questioned about this offense in his deposition, Fulton placed some blame on his brother, stating that "his brother might do something like that but that there was no way he could do anything like that."

Dr. Arambula testified that Fulton was initially charged with aggravated rape, but he ultimately pled no contest to rape. Fulton received ten years' probation for this offense. Fulton did not successfully complete his probation, as he left Texas for California. Fulton was eventually caught and extradited back to Texas, where, following a probation revocation proceeding, he received a five-year prison sentence.

Following his release from prison for this offense, while he was on parole, Fulton reoffended. Dr. Arambula testified that this second offense involved a 14-year-old girl, D.G. Fulton knew D.G. through a mutual friend. In August 1996, Fulton, who was 38 at the time and on parole, engaged in oral and vaginal sex with

3

D.G. During Dr. Arambula's interview of Fulton, Fulton admitted that he had sex with D.G. During his deposition, Fulton admitted that he "made a bad decision, it was a wrong choice, [and he] shouldn't have done it," but also claimed that D.G. had consented. This explanation differed from Fulton's previous explanation of the offense—that he did it because he had been frustrated with his wife.

Dr. Arambula testified that although Fulton has accepted some responsibility for this offense, by claiming that D.G. consented, he minimized the offense and partially blamed the victim. Dr. Arambula also testified that Fulton did not exhibit any remorse for this offense during their interview. As a result of this offense, Dr. Arambula testified that Fulton pled no contest, was convicted of sexual assault of a child, and received a five-year sentence.

Dr. Arambula testified that it was significant that Fulton committed an offense while he was on parole because "when somebody has been caught and punished for a sexual offense and then they recidivate while they're on supervision, that the risk for future recidivism is that much higher."

Dr. Arambula testified that Fulton was convicted of a third sexual offense, which occurred in 1996 as well. The victim was a 7-year-old girl, P.G. Fulton had been in a previous relationship with P.G.'s mother. According to the records Dr. Arambula reviewed, P.G. reported that on two or three occasions, Fulton fondled her, orally and digitally, and engaged in sex with her. Additionally, P.G. reported

that she was forced to drink Fulton's semen from a cup. When Dr. Arambula questioned Fulton about this offense, he denied that it happened and blamed P.G.'s mother for making up the allegations.

Like the second sexual assault offense, Fulton committed this sexual assault while on parole. He was not charged with this offense until 2003, after he served his time for the sexual assault of a child conviction. Fulton pled guilty, was convicted of aggravated sexual assault of a child, and received a 20-year sentence.

Dr. Arambula testified that Fulton has not accepted responsibility for this offense against P.G. Nor has Fulton shown any remorse.

Dr. Arambula testified that he diagnosed Fulton with sexual deviance, which is "a medical term that is used to describe somebody who has abnormal or pathologic sexual interests or activities." Dr. Arambula noted that the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"), which is a diagnostic manual published by the American Psychiatric Association, uses different terminology. Using the DSM terminology, Dr. Arambula testified that Fulton's diagnosis would be unspecified paraphilic disorder with features of sadism and pedophilia.

Dr. Arambula testified that Fulton's sexual offending history supports the diagnosis of sexual deviance. In addition, Dr. Arambula testified that Fulton's level of denial and minimization regarding his sex offenses is a sign of sexual deviance.

Dr. Arambula described Fulton as a "versatile offender" because his offenses are not limited to one type of victim. Dr. Arambula testified that Fulton exhibited features of sadism during the first offense—the rape of C.F. A person with sadism is sexually aroused by the physical and psychological pain that they impart on their victim or partner.

As noted, Fulton also offended against two minor children. Dr. Arambula testified that Fulton exhibited features of pedophilia, i.e., sexual attraction to children under 11, in sexually assaulting P.G., the 7-year-old victim. Although D.G. was 14 years old when Fulton sexually assaulted her, and therefore did not fit within the definition of pedophilia, she was still a minor. Dr. Arambula testified that it is sexually deviant for a 38-year-old man to engage in sexual intercourse with a 14-year-old girl.

Dr. Arambula explained that when sexual deviance reoccurs, it is typically a chronic condition—meaning it persists for life. A person with sexual deviance can learn to manage and control the condition in treatment, but, like other medical or mental illnesses, it will always be present.

Dr. Arambula testified that his diagnosis of Fulton's sexual deviance supports his opinion that Fulton suffers from a behavioral abnormality. Although not the only component underlying his opinion, Dr. Arambula stated that Fulton's sexual

deviance is a major factor in his case, particularly considering that there are three victims and that Fulton "regressed as he got older involving children."

Dr. Arambula also diagnosed Fulton with unspecified personality disorder with antisocial features. Dr. Arambula explained that antisocial as used in this context is a type of personality pathology where individuals exploit other people for their own benefit without regard for rules or the consequences of the person's conduct. Dr. Arambula stated that he did not make a full diagnosis of antisocial personality disorder because Fulton did not have a history of conduct disorder as a child. But Dr. Arambula testified that Fulton's history of antisocial behavior is "pretty high." Fulton also received a score of 26 on the PCL-R assessment, which screens for antisocial personality disorder and psychopathy. A score of 30 or higher infers the presence of psychopathy.

Dr. Arambula further testified that Fulton's antisocial behavior is one of the two biggest risk factors for sexual recidivism, the other being sexual deviance. Dr. Arambula explained that Fulton's antisocial behavior would explain why he absconded, why he did not comply the conditions of his parole or probation, and why he reoffended. In his deposition, Fulton also testified that he did not feel it was his responsibility to report as a sex offender. Dr. Arambula testified that this behavior captures how people with antisocial personality pathology think—"that the rules don't apply to them."

Dr. Arambula also further testified that Fulton has never participated in sex offender treatment, which is relevant to Dr. Arambula's evaluation for behavior abnormality. Dr. Arambula explained that a person's history is static—it's never going to change—but a person is able to "tip the see-saw" and can mitigate that history by participating in treatment and trying to understand their illness and condition. But here, Dr. Arambula testified that Fulton was not interested in treatment and had actually turned down a recent offer for treatment. Further, Fulton neither acknowledges his sexual deviance nor understands why he committed these sexual offenses.

Dr. Arambula additionally testified that Fulton's employment history and good behavior in prison were some positive factors in Fulton's favor.

In sum, Dr. Arambula opined that Fulton has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence and a high risk of recidivism.

Fulton testified in his own defense. He explained that he grew up in Los Angeles, California in a strict household. He was not physically or sexually abused or neglected as a child. Fulton also detailed his work history, both before and during his prison sentence.

Fulton testified that he came to Houston in 1981 to visit his mother. While in Houston, Fulton was arrested for the aggravated rape of C.F. Fulton denied knowing

8

C.F. and denied knowing the details of the offense. On cross-examination, Fulton claimed he was at his aunt's house on the day of the offense when the police picked him up. And he claimed that his brother may have been involved, as he thought his brother knew C.F.

Fulton admitted that he was initially charged with aggravated rape but pled no contest to the lesser charge of rape. He admitted that he was convicted of rape and initially placed on probation for ten years. He claimed that the only reason why he took probation was because he was told that he could return to California, and he left Texas for California the day after he was sentenced. Fulton admitted that he violated the terms of his probation by failing to report to his probation officer, he was arrested in California, and he was returned to Texas where he received a five-year sentence in prison.

Fulton was released on parole in December 1994, after which he was required to register as a sex offender. Fulton admitted that while he was on parole, he committed an additional sex offense. He admitted that in August 1996, when he was 38, he had sexual intercourse with D.G., who was 14. He explained that this offense was that it "was a bad choice" and it was something he should not have done. He testified that he felt remorse for this offense and wished he could take it back and tell D.G. he was sorry. He admitted that he was charged with and convicted of sexual

assault of a child and received a five-year sentence. He was released from prison for this conviction in 2001.

Fulton also admitted that he was charged with and convicted of aggravated sexual assault of a child, P.G. Although he admitted that he pled guilty to this offense, he denied committing it. He explained that he had divorced P.G.'s mother while serving his sentence on the sexual assault of D.G., but that she had wanted to stay married. After he left prison, he contacted P.G.'s mother, now his ex-wife, about their daughter, but never heard back. A few weeks later he was arrested on the aggravated sexual assault charge of P.G. He admitted that he received a 20-year sentence for this conviction, and that he is currently serving this sentence in prison. He claimed that he pled guilty to this offense because the district attorney told him they would seek a life sentence.

Fulton testified that he has committed only one sex offense—against D.G. He stated that he was innocent of the other two offenses, despite having pled guilty. Although he agreed that he is a sex offender, Fulton claimed he is not a sexually violent person and does not have a behavioral abnormality. Instead, he is a normal person who "made a mistake. One mistake."

The jury unanimously found beyond a reasonable doubt that Fulton is a sexually violent predator.

## Exclusion of Testimony

Fulton now argues that the trial court erroneously limited his cross-examination of Dr. Arambula and improperly excluded his own testimony related to the underlying facts of the 1981 rape.

## A.     Standard of Review

"We review a trial court's evidentiary rulings for abuse of discretion." *In re Commitment of Stuteville*, 463 S.W.3d 543, 554 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000)).  A trial court abuses its discretion when its evidentiary ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *In re Commitment of Burd*, 612 S.W.3d 450, 461 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

If the trial court erred in admitting or excluding evidence, we will not reverse unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Stuteville*, 463 S.W.3d at 554.

## B.     Limitation of cross-examination

Fulton first contends that the trial court abused its discretion by "cut[ting] off" his cross-examination of the State's expert witness, Dr. Arambula, as to "inconsistencies" in factual data in the records Dr. Arambula reviewed.

During Dr. Arambula's testimony, he confirmed that he reviewed offense reports prepared by law enforcement professionals and that he "rel[ies] on their training and professional technique." Fulton's counsel thereafter asked Dr. Arambula whether he noticed "any inconsistency in reporting by law enforcement in this case." The State objected that this was an improper collateral attack on the 1982 judgment for rape. The following exchange then occurred:

[Defense]: When he's reviewing it and relying on the record, I believe I have some latitude to ask him about what he's relying upon and I am not trying to at this point solicit lots of details but I think I should be entitled to question about whether or not he's noticed inconsistencies among the reports.

[State]: But for what purpose? The only purpose is to suggest that he didn't do what he's been found in a court of law to have done.

[Defense]: The point is to show that—we are trying to show that Dr. Arambula is biased and that he's cherry-picking about information that he wants to rely on for his opinion and discounting other things that are favorable to Mr. Fulton.

[State]: They're trying to do the opposite. He's relying on the fact Mr. Fulton was found guilty.

The Court: What specifically do you think that he ignored in the report that he should have taken into account that would have been favorable to your client?

[Defense]: Well, . . . I wanted to bring out that Mr. Fulton asked for a sperm test when [the 1981 rape] happened. He's . . . consistently . . . denied the offense and I feel like I should at least be able to ask if he reviewed a record in his possession where Mr. Fulton offered to take a sperm test in relation to that offense. . . .

12

. . . .

> The Court: . . . . I'm going to sustain the objection as to inconsistencies.

According to Fulton, because exposing inconsistent facts to demonstrate a witness's possible bias is a legitimate purpose of cross-examination, the trial court abused its discretion by prohibiting this line of questioning. The State responds that Fulton failed to preserve this issue for appeal, and even if he did, the trial court properly excluded this testimony and Fulton has failed to show that the exclusion of this testimony resulted in an improper judgment.

Assuming without deciding that Fulton preserved this issue and the trial court erroneously excluded this testimony, we agree with the State that Fulton has failed to demonstrate that he was harmed by the exclusion of this testimony. *See* TEX. R. APP. P. 44.1(a)(1); *see, e.g.*, *In re Commitment of K.H.*, 609 S.W.3d 247, 256 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (applying harmless-error analysis in deciding whether limiting scope of expert's cross-examination warrants reversal).

The exclusion of evidence is reversible error only if the complaining party shows that the trial court committed error that probably caused the rendition of an improper judgment. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010); *see also* TEX. R. APP. P. 44.1(a)(1). In making this determination, we review the entire record. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Typically, a successful challenge to a trial court's evidentiary rulings requires

13

the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). If the excluded evidence was crucial to a key issue, the error is likely harmful. *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870. But the exclusion of evidence is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference. *Id.*

Although Dr. Arambula's opinion of Fulton's behavioral abnormality was a key issue at trial, and thus, so was Dr. Arambula's credibility, the excluded evidence of general "inconsistencies" was not crucial to this issue. The only inconsistency identified by Fulton below was the fact that he offered to take a sperm test in relation to the 1981 rape. But Fulton's argument overlooks the evidence of his conviction for this offense, and Dr. Arambula's testimony that he has been trained not to "challenge a decision that comes out of a district court," unless he was involved in a "legal proceeding to reexamine the basis for the prior decision." In other words, Dr. Arambula testified, "if somebody has pled guilty or no contest, [or] they're convicted by a jury, [he] do[es]n't challenge that decision."

Additionally, Fulton argues that the excluded evidence of Fulton's offer to take a sperm test demonstrates Dr. Arambula's bias and cherry-picking from the record to support his opinion. Yet Fulton sought this evidence because it was arguably favorable to him, i.e., because it shows that he consistently denied

14

committing the offense. But the record contains ample evidence, including Fulton's own testimony, of Fulton's denial with respect to the rape offense and the aggravated sexual assault offense. And Dr. Arambula took this denial into consideration in forming his opinion in this case, not that Fulton does not suffer from a behavioral abnormality—rather, that he *does*. Thus, the excluded evidence of inconsistencies in the record was cumulative at best. *See Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870.

Furthermore, the excluded evidence of inconsistencies is but one small piece of evidence in the records reviewed by Dr. Arambula and not critical to his determination that Fulton suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence in the future.

Rather, Dr. Arambula relied on an abundance of information to form this opinion, as detailed above, including the law enforcement reports, court documents, and prison records detailing Fulton's *three* convictions for sexually violent offenses, Fulton's deposition, a previous psychological evaluation of Fulton, and his own interview of Fulton. *See, e.g.*, *In re Commitment of Dunsmore*, 562 S.W.3d 732, 743–44 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (concluding that exclusion of defendant's testimony that he only pleaded guilty because he had been "roughed up" by police and that one victim made false allegation about finding pornography on his computer was harmless, particularly in light of substantial evidence

15

supporting psychologist's opinion that defendant suffered from behavioral abnormality).

Finally, Fulton was able to attack Dr. Arambula's credibility or alleged bias in other ways. For instance, on cross-examination Dr. Arambula admitted that in all civil commitment proceedings, he has been hired by the State. Fulton also questioned Dr. Arambula about the rates he charges for testimony in these types of cases. These are effective ways to establish bias or prejudice. *See, e.g.*, *Russell v. Young*, 452 S.W.2d 434, 436 (Tex. 1970) ("[I]n order to show bias and prejudice an expert medical witness may be cross-examined regarding the number of times he has testified in lawsuits, payments for such testifying and related questions.").

Accordingly, after considering the entire record, we hold that the exclusion of evidence related to alleged inconsistencies in the record did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). The error, if any, was harmless. *See id.*

## C. Exclusion of evidence of underlying facts

Fulton next contends that the trial court abused its discretion by excluding his testimony regarding the facts and details underlying his 1982 rape conviction. But Fulton did not preserve this issue for appellate review.

During Fulton's testimony, he began discussing the factual details surrounding the rape charge, including his brother's potential involvement. At that

16

point, the State objected on the basis of hearsay and that this was "attacking the final judgment." The following exchange occurred at the bench:

> The Court: Okay. What—what's your argument?
>
> [State]: My argument is that it's a collateral estoppel argument . . . . I know he's entitled to explain why he pled guilty but he's going into specific details at this point. He's trying to relitigate what's already been determined to have happened . . . . I think he's done what he's entitled to do but I think he's veered off into the point where he's collaterally attacking a judgment by going into all these details and whatnot.
>
> . . . .
>
> The Court: Yeah. And, I mean, we are getting like into all of the details of what happened surrounding that so—
>
> [Defense]: Right, it would only be because the State opened the door basically saying that, you know, he's blaming other people, he talked about—the State asked about his brother because at the deposition, his brother being a part of it was discussed, whether—when he came down to Houston was discussed.
>
> The Court: Okay.
>
> [Defense]: You know, how he came here was discussed. So all he's doing is laying out the details surrounding the events that have already been discussed.
>
> The Court: Okay. Let's—let's move along. I'll allow you to ask like one or two more questions along this line but after that, let's move along.
>
> [Defense]: That's fine. That's fine.
>
> The Court: Okay.
>
> (End of discussion at the bench.)

17

The Court:   Okay, counsel.

[Defense]:   Can he continue?

The Court:   Why don't you ask your next question?

Fulton's counsel thereafter chose not to ask further questions on this topic, instead moving to a different topic.

To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court. *Akukoro v. Akukoro*, No. 01-12-01072-CV, 2013 WL 6729661, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2013, no pet.) (mem. op.); *see also* TEX. R. APP. P. 33.1(a)(2)(A) (requiring trial court ruling on request, objection, or motion for preservation).  The complaining party must also demonstrate the substance of the excluded evidence through an offer of proof or a bill of exception, unless the substance of the evidence is apparent from the context. TEX. R. EVID. 103(a)(2); *Compton v. Pfannenstiel*, 428 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

The offer of proof serves primarily to enable the reviewing court to assess whether excluding the evidence was erroneous and, if so, whether the error was harmful. *Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 608 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  "While the reviewing court may sometimes be able to discern from the record the general nature of the evidence and the propriety of the trial court's ruling, it cannot, without an offer of proof, determine whether

18

exclusion of the evidence was harmful." *Compton*, 428 S.W.3d at 886 (quoting *Akukoro*, 2013 WL 6729661, at *6).

Here, Fulton never obtained an adverse ruling from the trial court. As evidenced by the above exchange, rather than excluding any testimony, the trial court ruled that it would allow Fulton's counsel to ask "one or two more questions along this line," but then requested that she move on. After Fulton's counsel said, "that's fine," she asked if Fulton could continue his narrative, to which the trial court responded, "[w]hy don't you ask your next question?"

Fulton's counsel chose not to ask additional questions about Fulton's version of the events leading up to the 1981 rape—asking Fulton instead "whether your brother was involved, you ended up pleading guilty to this, correct?" Thus, we conclude that Fulton did not obtain an adverse ruling from the trial court. *See* TEX. R. APP. P. 33.1(a)(2)(A); *Akukoro*, 2013 WL 6729661, at *6.

Moreover, Fulton neither made an offer of proof to the trial court as to the substance of Fulton's expected testimony, nor did he file a formal bill of exception. *See* TEX. R. EVID. 103(a)(2). Accordingly, we hold that Fulton did not preserve this complaint and it is not properly before us. *Compton*, 428 S.W.3d at 886; *Fletcher*, 57 S.W.3d at 608.

## Conclusion

For all of these reasons, we affirm the trial court's judgment and order of commitment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.